IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-02690-MSK-CBS

**DEMETRIUS TERRELL FREEMAN**

 Plaintiff,
v.

**ALICIA VINEYARD, MLP**
**G. SANTINI, Dr.,**
**KELLAR, PAC.**
**CARI RITTER, PAC, and**
**100 JOHN AND JANE DOES,**

 Defendants.

---

**OPINION AND ORDER GRANTING, IN PART, MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss **(# 78)**, Mr. Freeman's *pro se* response **(# 83)**, and the Defendants' reply **(# 92)**.[1]

According to Mr. Freeman's *pro se* Amended Complaint **(# 74)**, Mr. Freeman is an inmate in the custody of the Federal Bureau of Prisons ("BOP"), housed in the FCI Florence facility. The particular factual allegations in the Amended Complaint are somewhat chronologically-scattered, and the Court attempts to set them forth in temporal sequence.

Mr. Freeman suffers from sickle-cell disease. In late July 2009, he noticed that he was feeling unusually fatigued and suffering from shortness of breath. He inquired of Defendant

---

[1]Without seeking or obtaining leave of the Court to do so, Mr. Freeman subsequently filed a sur-reply **(# 98)**. The Court finds that nothing therein materially affects the analysis here, and thus, the Court need not address whether the sur-reply should be considered.

Kellar, a medical staffer, whether "high elevation had any effect on sickle cell." Defendant Kellar, after consulting a website, stated that "I don't see anything in relation to sickle cell and high elevation." Mr. Freeman contends that "any reasonable physician will not dispute the negative effects of high elevation and sickle cell" and that "this is a complete misdiagnosis." (Elsewhere, Mr. Freeman contends that BOP policies require him to have a form in his medical records noting the medical risks attendant to transporting him. He contends that no such form has been completed for him, and states that "if this form was in my medical record, it would have eliminated one of the factors that triggered" the incidents described below. The Court understands this allegation to contend that a properly-prepared medical record would have prevented Mr. Freeman from being transported to a high-altitude facility.)

On December 7, 2009, he began suffering significant pain and abdominal distress and sought medical attention. He was told that there was no medical staff present to attend to his needs, and that he would have to wait until sick call on the following day. He states that the failure to have medical staff available on a 24-hour basis constitutes a violation of the BOP's Health Services Manual.

On December 8, 2009, he described his symptoms to Ms. Vineyard, a medical staffer FCI Florence, stating that he believed he was suffering from a sickle cell crisis. Ms. Vineyard diagnosed Mr. Freeman as being constipated, but refused his request for both laxatives and pain relievers.

Mr. Freeman sought medical treatment again on December 9, 2009. He states that there was "an undisputable language barrier" between himself and Ms. Vineyard, insofar as she failed to properly record his complaints in his medical record – for example, recording that he was in

"no pain at this moment," when, in fact, Mr. Freeman was reporting experiencing pain. Ms. Vineyard again refused to prescribe pain medication for Mr. Freeman, apparently believing that he was "requesting pills for daily use," rather than for immediate treatment of his current symptoms.

From December 9 through December 12, 2009, Mr. Freeman was unable to eat. He states that BOP policies require that an inmate who does not eat for more than 72 hours must be given immediate medical attention. He states that his refusal of food was brought to the attention of Ms. Vineyard and Defendant Keller, the facility's Medical Director, but that he nevertheless received no medical treatment. He also notes that, over a span of 23 days, he lost "in excess of 30 pounds."

On December 10, 2009, Mr. Freeman underwent x-rays or "imaging" tests at the direction of Ms. Vineyard (a direction "approved" by Defendant Santini). He contends that the tests he was given were the wrong ones necessary "to make a professional judgment" of his condition. (He contends the same improper tests were administered again on December 28, 2009.)

Mr. Freeman further contends that Ms. Vineyard rejected his request that she issue him a "no work pass" on December 22nd, 23rd, and 28th of 2009, even though Mr. Freeman had "body temperatures over 100 degrees."

On December 28, 2009, staff escorted Mr. Freeman to the medical ward because he had a temperature of 100.9 degrees, he was vomiting, and suffering from shortness of breath. He was seen by Defendant Ritter. He states that he had a resting heart rate of 80 beats/minute, but Defendant Ritter recorded him as having a normal heart rate. Although he was reporting a pain

level of 10, he was given no pain relief medication or other treatment.

Mr. Freeman states that he finally received some medical attention for his condition on December 29, 2009. He states that Defendant Keller "saw my movements while walking" and allowed Mr. Freeman to be seen by Dr. Santini. Dr. Santini prescribed Tylenol for Mr. Freeman and requested that Mr. Freeman be transferred to a local hospital. (Mr. Freeman contends that Ms. Vineyard attempted to influence Dr. Santini to simply place Mr. Freeman in an observation room overnight, but Dr. Santini refused to do so.) At the hospital, tests revealed that Mr. Freeman was suffering from "trapped fluids, gasses, swollen spleen, and a possible splenic abscess." Mr. Freeman immediately underwent surgery to remove his appendix and spleen.

Mr. Freeman returned to FCI Florence following the surgery, accompanied by a prescription that he receive 1,000 mg. of Tylenol for a period of four to six weeks. He contends that he did not receive any medicine for the first four days of his return, and that after the 10th day, at the direction of Dr. Santini, he thereafter received only 975 mg. of Tylenol, an amount he states was insufficient to alleviate his pain. He also states that although he was directed to engaged in active rehabilitation, on January 8, 2010, Ms. Vineyard issued orders confining him to his cell. As a result, he was not able to access the various rehabilitation equipment in the facility's exercise room. He complained of this denial of access to Ms. Vineyard and Dr. Santini, but both refused to change his confinement status. Dr. Santini suggested that Mr. Freeman engage in solitary exercises called "burpees" while in his cell, but Mr. Freeman contends that he "was in no physical condition to do a burpee."

Based on these contentions, Mr. Freeman asserts a single[2] *Bivens* claim against the various Defendants, alleging that their deliberate indifference to his medical needs violated his 8th Amendment rights.

The Defendants move to dismiss **(# 78)** the claims against them, arguing: (i) Defendants Keller and Ritter are not subject to individual liability because they are officials of the Public Health Service, and pursuant to 42 U.S.C. § 233(a), any remedy for violations by these Defendants must be sought from the United States, not the Defendants individually; and (ii) Mr. Freeman fails to state a viable 8th Amendment claim against Ms. Vineyard and Dr. Santini.

## ANALYSIS

**A. Standard of review**

1. <u>Motion to dismiss standard</u>

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of

---

[2] By Minute Order **(# 71)**, the Magistrate Judge struck a second claim for relief, sounding in outrageous conduct against Ms. Vineyard, alleged in the Amended Complaint.

such documents is undisputed.[3] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

With regard to what must be pled to avoid dismissal, the Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), described the standard that must be met as "facial plausibility." In this context, "plausibility" refers to the scope and degree of specificity of the allegations in the complaint. *Khalik v. United Air Lines*, ___ F.3d ___, 2012 WL 364058 (10th Cir. Feb. 6, 2012). Although Fed. R. Civ. P. 8(a)(2) still requires the pleader to supply only "a short and plain statement of the claim," that statement must provide more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or generalized allegations of conduct that "encompass a wide swath of conduct, much of it innocent." *Id.* In this regard, the plaintiff must do more than articulate a set of facts that could "conceivabl[y]" or "possibly" give rise to a claim; he must "nudge[ ] his claims across the line from conceivable to plausible." *Id.* Of course, the degree of specificity that will be required will necessarily vary based on the context of the case. *Id.*

*Iqbal* suggests that one way for the Court to proceed when considering a Rule 12(b)(6) motion is for the Court to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. 129 S.Ct. at 1950. Once the complaint has been winnowed down to only those sufficiently-specific, non-conclusory factual allegations, the Court

---

[3]The Defendants attached certain medical records and materials to their reply brief, arguing that Mr. Freeman's Amended Complaint makes reference to those documents. The Court has considered the medical records only to the limited extent that they are specifically referenced in the Amended Complaint (*i.e.* to establish that Mr. Freeman has been noted as having a sickle-cell trait and that he reported no pain on December 9, 2008), and has disregarded them for all other purposes.

treats those allegations as true and proceeds to examine whether, under the controlling law, those facts are sufficient to state a claim.

### 2. *Pro se* pleading standard

In considering Mr. Freeman's filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Freeman of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Mr. Freeman according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

**B. Eighth Amendment analysis**

To state a claim for deprivation of 8th Amendment rights based on the failure to receive medical treatment, an inmate must allege: (i) that he suffered from a serious medical need—that is, one that has been diagnosed by a medical provider as requiring treatment or one which even a lay person would easily recognize as requiring medical attention; and (ii) the Defendant was subjectively aware of that need and that failing to treat it would pose an excessive risk to the inmate's health or safety, but nevertheless elected to delay or deny treatment for it. *See e.g. Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir.2000). The subjective component requires an examination into the defendant's actual state of mind. To satisfy this element, the inmate must plead facts that show that the defendant both "actually knew of" and "deliberately

disregarded" the fact that the inmate was suffering from a serious medical need. *Boles v. Dansdill*, 361 Fed.Appx. 15, 18 (10th Cir.2010) (unpublished), *citing Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir .1980). It is not sufficient for the inmate to plead facts showing a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives. *Ramos, id.* at 575. Rather, the inmate must show that a defendant "prevented [him] from receiving recommended treatment" or that the defendant "denied [him] access to medical personnel capable of evaluating the need for treatment." *Id.*

      1. <u>Ms. Vineyard</u>

The bulk of Mr. Freeman's complaints relate to the treatment (or lack thereof) he received from Ms. Vineyard, and the Court turns first to the sufficiency of the allegations against her.

Turning first to the question of whether Mr. Freeman has adequately alleged that he suffered from a serious medical condition, the Court begins with the observation that Mr. Freeman is required to allege facts showing an <u>objectively</u> serious medical condition. Typically, this element is satisfied by showing either: (i) that the condition has been diagnosed by a medical provider as requiring treatment (and that treatment recommended is not thereafter provided); or (ii) that the condition is so obvious that even a lay person would easily recognize the necessity of a doctor's attention. *Stepnay v. Goff*, 164 Fed.Appx. 767, 769-70 (10th Cir. 2006), *citing Garrett v. Stratmam*, 254 F.3d 946, 949 (10th Cir. 2001). The Court will assume, without finding, that Mr. Freeman has adequately alleged that he was suffering from an objectively serious medical condition. Although the Amended Complaint contains relatively few allegations of the particular symptoms he reported and his own self-diagnosis of suffering from a sickle-cell crisis

is not necessarily sufficient to support the objective element, the Court will assume that the allegations of description of the symptoms he reported are sufficient to demonstrate that at <u>some</u> point, the symptoms he was manifesting were sufficiently serious that a lay person would recognize the need for medical attention.  Among other things, he made Ms. Vineyard aware of symptoms including pain, constipation, no appetite over a 72 hour period, rapid weight loss, and high body temperature, among other things.  Taken in the light most favorable to Mr. Freeman, the Court will assume that these allegations are sufficient to demonstrate an objectively-serious medical condition.

Next, Mr. Freeman must allege facts showing that Ms. Vineyard was subjectively conscious of the risks that his medical condition posed, but that she deliberately ignored those risks.  *Farmer v. Breannan*, 511 U.S. 825, 837 (1994) ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").  On this point, Mr. Freeman's pleading is less sufficient.  On the one hand, Mr. Freeman appears to suggest that a "language barrier" existed between himself and Ms. Vineyard, such that she misunderstood the nature and extent of the symptoms he was reporting to her (recording "no pain" when he was reporting feeling pain), or misunderstood the requests for relief he was making (believing he was requesting "pills for daily use" rather than immediate pain relief).  To the extent that Mr. Freeman is alleging that Ms. Vineyard misunderstood him, this would be insufficient to show that Ms. Freeman subjectively understood the severity of Mr. Freeman's condition and yet disregarded it.  Although one might contend that Ms. Vineyard was negligent in failing to properly understand his reporting of symptoms or in diagnosing his condition, negligence in providing medical care is insufficient to give rise to

Eighth Amendment liability. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1974).

Moreover, Mr. Freeman's Amended Complaint acknowledges that, although Ms. Vineyard denied his requests for pain relievers or a laxative, she did provide some treatment for his condition. Specifically, Mr. Freeman contends that Ms. Vineyard directed that he undergo a series of imaging tests on December 10. Although he contends these tests were improper or ineffective for diagnosing his condition, such an allegation is one of negligence, not deliberate indifference.

Nevertheless, the Court will not dismiss Mr. Freeman's Eighth Amendment claims against Ms. Vineyard at this early stage of the proceedings. At most, the Amended Complaint reflects that the only "treatment" provided by Ms. Vineyard was the imaging tests on December 10, and that Mr. Freeman continued to exhibit symptoms of weight loss, fever, and pain for weeks thereafter. Although nothing in the Amended Complaint expressly alleges that Ms. Vineyard subjectively recognized the seriousness of these symptoms, it is possible to infer her subjective recognition of that risk where Mr. Freeman's symptoms were "obvious." *Kikamura v. Osagie*, 461 F.3d 1269, 1294 (10th Cir. 2006). Here, the Amended Complaint recites Ms. Vineyard's knowledge of Mr. Freeman's rapid weight loss and persistent fever, and it may be that such symptoms might ultimately be shown to be so obvious that the factfinder could infer Ms. Vineyard's subjective recognition of their severity. Accordingly, the Court denies Ms. Vineyard's motion to dismiss the Eighth Amendment claim.

    2. Dr. Santini

The Court will not belabor the analysis of the Eighth Amendment claim against Dr. Santini, as that claim is clearly deficient. The Amended Complaint references Dr. Santini in four

respects: (i) he concurred with Ms. Vineyard that the improper imaging tests should be administered; (ii) he saw Mr. Freeman on December 29, and prescribed Tylenol and directed that Mr. Freeman be seen at a local hospital; (iii) he refused to provide the full 1,000 mg. of Tylenol prescribed by Mr. Freeman's outside doctor, instead supplying Mr. Freeman with only 975 mg. of Tylenol; and (iv) he refused to overrule Ms. Vineyard's decision to confine Mr. Freeman to his cell, thus preventing him from having meaningful access to rehabilitation equipment. The Court has previously addressed how the allegation of "improper" imaging tests fails to plead the element of deliberate indifference, and thus, the Court turns to the remaining three allegations against Dr. Santini.

All three of the remaining allegations – referring Mr. Freeman to a hospital, providing him with only a partial regimen of Tylenol, and suggesting that he rehabilitate by performing "burpees" in his cell – constitute treatment of Mr. Freeman's condition by Dr. Santini. Certainly, Mr. Freeman believes that such treatment was ineffective or sub-optimal, but an inmate's mere disagreement with the appropriateness of medical treatment provided to him, or a disagreement between physicians as to the appropriate regimen of treatment to be provided does not give rise to an Eighth Amendment claim. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). Accordingly, the Court finds that Mr. Freeman has failed to state an Eighth Amendment claim against Dr. Santini.

### 3. Defendants Kellar and Ritter

Defendants Kellar and Ritter do not specifically argue that the claims against them are deficient from a pleading standpoint; rather, they argue that the Court lacks jurisdiction over those claims because 42 U.S.C. § 233(a) precludes individual capacity claims against agents of

the National Health Service.

42 U.S.C. § 233(a) provides that the Federal Tort Claims Act is the exclusive remedy "for damage for personal injury . . . resulting from the performance of medical [treatment] by any commissioned officer or employee of the Public Health Service." *Hui v. Castaneda*, 130 S.Ct. 1845, 1851 (2010) (recognizing that *Bivens* claims by inmates for inadequate medical treatment are preempted by § 233(a)). All that is necessary to effectuate the operation of § 233 is a certification by the Attorney General that the Public Health Service officials were acting within the scope of their employment at the time of the alleged conduct, and the Attorney General has so certified here. Consequently, Defendants Kellar and Ritter are immune from suit and thus, the Court is without jurisdiction over the claims against them.[4]

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss **(# 78)** is **GRANTED IN PART**, insofar as the Court **DISMISSES** all claims against Defendants Kellar and Ritter for lack of subject-matter jurisdiction, and all claims against Defendant Santini pursuant to Fed. R. Civ. P. 12(b)(6), and **DENIED IN PART**, insofar as the claims against Ms. Vineyard may proceed. The caption of the case is **AMENDED** to omit reference to any Defendant other than Ms. Vineyard.

Dated this 18th day of May, 2012

---

[4] Neither party has addressed whether substitution of the United States as a defendant and conversion of Mr. Freeman's *Bivens* claims to claims under the Federal Tort Claims Act would be appropriate in the circumstances presented here. Thus, the Court refuses to consider the question. The Court notes that, in *Hui*, the plaintiff had asserted a Federal Tort Claims Act claim against the United States in addition to its *Bivens* claims against the Public Health Service officials, and thus, the Supreme Court was not required to consider whether substitution of defendants or conversion of claims was necessary. 130 SCt. at 1849-50 & n. 3.

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge

13